## HENRY ESTY & A. v. ISAAC ALDRICH, JR.

Where A. delivers cattle to B. under the agreement that they are to remain the property of the former until paid for by B., the arrangement is not, as matter of law, fraudulent as to the creditors of B.

Nor is such an agreement within the fourth clause of our statute of frauds, as it may be fully performed within a year.

TROVER for 2 cows, 1 yearling heifer and 2 calves, alleged to be the property of plaintiffs, and wrongfully taken and converted by defendant on the 25th day of September, 1862.

The pleadings claimed the property to have been attached by defendant on legal process as the property of John B. Osborne in favor of one Anson Cole. There was no dispute that defendant was a deputy sheriff at the time of the attachment, nor that Cole's debt was then due and valid. It appeared in evidence, that, in the spring of the year, 1858, said Osborne was poor and in embarrassed circumstances, and resided upon a farm in Westmoreland, in which his wife's mother was entitled to one half of the income. and that he then applied to the plaintiffs, as his neighbors and friends, for assistance to enable him to stock and carry on his farm. He requested plaintiffs to furnish him with a pair of young working oxen ; also with three milch cows, with the understanding that ·he, the said Osborne, should have the use of said oxen, and take good care of them, and the plaintiffs to have the benefit of their growth, and that Osborne was to have the milk of the three cows, and to keep them

well, while the plaintiffs, in the mean time, were to have all the increase of the cows, arising from calves, or all the calves were to be the plaintiffs' until they should get back the amount of their advances;—the plaintiffs also to have the right at any time to take possession and dispose of any or all of said stock, whenever they might see fit.

The plaintiffs acceded to the aforesaid proposition of Osborne, each agreeing to furnish his share or half of the outlay.

They put on the place accordingly, a pair of steers, for which they paid $105.00, also three cows reckoned at about $90.00—and an old wagon, about which there was no question, being estimated at $10.00—in all $205.00. The cows were put on the place, the last of March or first of April, 1858, and were then with calf; the two cows in dispute being the calves of that spring, and when attached, in 1862, were called 4 years old cows. It appeared also that the said yearling and 2 calves now claimed by plaintiffs were the offspring of two of the cows originally put on the place as aforesaid. Of the three cows put on the place in 1858, two of the same had been before kept on the place, and when Osborne failed in business these cows were bid off by plaintiffs at a regular auction sale of Osborne's property. The third cow was found by Osborne and the price of her ascertained by Osborne, and he, procuring the money from plaintiffs and paying the price, took the cow into his possession under the aforesaid agreement. The plaintiffs occasionally conferred with Osborne as to the treatment and disposition or sale of the cows and their progeny. One of the old cows was fatted and killed; Osborne consulted with plaintiffs about selling her, he agreeing to dispose of her and account for proceeds. Osborne testified that he sold all of her except one quarter which he consumed in his family, and for this quarter he had agreed to account with plaintiffs, and that he had paid over $25.00 for the part he sold. Since this suit was commenced, another of the old cows had been disposed of, and the proceeds paid over to plaintiffs, at the price of $35.00. It appeared also that Osborne, by consent of the plaintiffs, had consumed one calf and had agreed to account for the proceeds to them. For two of the years between 1858 and 1862, all the cows were farrow.

The oxen had been sold at $145.00 and proceeds paid over to plaintiffs by Osborne. At the time of the attachment, Woodward, one of the plaintiffs, was present and notified the defendant and Cole, the attaching creditor, who was also present, as to the nature and extent of plaintiff's claim and forbade the taking. The contract, as before stated, was verbal and indefinite as to time.

From the testimony of the plaintiffs it might be fairly inferred that the young calf used by Osborne was to be treated as a gift by plaintiffs to him, for which he was to render no further account.

Both of the plaintiffs, in substance, testified, that, under their agreement with Osborne, they claimed nothing in the cattle any more or longer than to get the pay for the money advanced.

There was at the trial some testimony offered tending to show former statements of Osborne contradictory to some of his evidence now given in, affecting his veracity, memory, &c., and giving a character to the

manner in which the property had been treated by the witness. This was submitted, with the other evidence in the case, to the jury. It did not appear that Osborne kept any other cattle on the place during the time aforesaid. The court, among other things, instructed the jury that they might inquire whether the contract and the things done under it were honest and bona fide, or whether any fraud had been intended or committed by the parties to it;—that if they found plaintiffs had paid a full price for the cows which were originally placed on the farm, they being at the time with calf, such progeny of the said cows would vest in the plaintiffs as owners; and that a contract of this kind might extend for such reasonable time as would enable the plaintiffs to realize their indemnity according to its terms. It was for the jury to inquire whether this contract was tainted with any actual fraud or was attended with any secret trust or any improper benefit was reserved to Osborne, or whether the tendency and effect of the arrangement was of that character as would necessarily delay, hinder or prevent the creditors of Osborne from obtaining their just remedies at law. If the jury found the contract, or any part of it, fraudulent, they were instructed to set it aside and render their verdict for defendant. The counsel for defendant, suggesting that it was matter of law whether four years was not an unreasonable time for the completion of such a contract, asked the court to instruct the jury accordingly. Whereupon the court, under the views before suggested, told them it would not, but subsequently told them they might form their own judgments upon all the evidence upon this point as well as all others raised in the case. The jury having found their verdict for the plaintiffs, the defendant excepted to the charge of the court or a portion thereof

*Carleton* for defendant.

*Wheeler & Faulkner*, for plaintiffs.

BARTLETT, J.    Although, by the contract between the plaintiffs and Osborne, as the jury have found it, the cows with their increase and the oxen while in Osborne's possession and use were still to be the property of the plaintiffs till paid for by Osborne, yet this was not, as matter of law, fraudulent as to Osborne's creditors. *McFarland* v. *Farmer*, 42 N. H. 386; 3 Dane's Abr. 157. Nor was this agreement within the fourth clause of our statute of frauds, as it might have been fully performed within one year. *Blanding* v. *Sargent*, 33 N. H. 239.

This disposes of the exceptions now insisted on by the defendant; for if some questions of law were submitted to the jury, it is immaterial here, as their finding upon them was correct, and the defendant has suffered no injury from this course. As the instructions excepted to were sufficiently favorable to the defendant, there must be

*Judgment on the verdict.*